Mr. Leach, please proceed. You're reserving two minutes, correct? Yes, I am, Your Honor. Okay. Your Honor, this is a case involving devices for supplying power and avoiding phantom loads when the power is turned off. I want to focus on what I think is the most important issue in my limited time, and that's Claim 11. Specifically with respect to Claim 11, I want to focus on the claim limitation of circuitry for converting the input power voltage to the output power voltage and for determining an off state of the circuitry. In this case, there's an issue as to whether the Patent and Trademark Office gave the claim its broadest reasonable interpretation. In the PTO, the patent owner argued that this claim limitation meant AC to DC converting. The patent examiner didn't agree and agreed with the requester that, look, there are other claims that claim AC to DC converting, so it's unreasonable to limit this claim to AC to DC converting because when the patent owner intended to limit the claim, he said so. There were other claims such as Claim 56 that claimed converter circuitry for converting the input voltage into DC output voltage. Where do you address in your brief the PTAB's statement that it, quote, did not conclude that converting is limited to AC to DC conversions? Your Honor, I'm not sure I understand the question. Oh, okay. I'm not sure that we said the PTAB concluded that it was limited to AC to DC converting. The PTAB came up with their own definition. The PTAB said it. The PTAB. Where did you address its statement? That, so yes, it's, where did I address the PTAB's claim construction or where did I address the PTAB's, I'm not sure which statement you're referring to, Your Honor. The PTAB came up with its own claim construction. I'm quoting. From my brief or from the PTAB? No, from the PTAB. And what did they say, Your Honor? They, quote, did not conclude that, quote, converting, close quote, is limited to AC slash DC conversions, close quote. Well, I don't disagree with that. I think that they did not say it was limited to AC, DC converting. They came up with something in between, Your Honor. I don't think I addressed it in my brief because I don't think it's an issue here. I think everybody agrees that the PTAB came up with a claim construction that includes something more than AC, DC converting, and that was the problem in this case. Because the patent owner argued one construction, the patent examiner and the requester followed a broader construction, and the PTAB, in their decision, came up with a construction that no one had argued, that no one had advanced. They are allowed to do that, right? If they're allowed to look at the claims and the specification and determine what a claim term means without, they don't have to always adopt one of the two parties' positions. I agree with that. But I also respectfully submit that they did not adopt the broadest reasonable construction. So in this case, the broadest reasonable interpretation is an important rule because, as the Supreme Court reminded us recently, the purpose, it does increase the possibility that the examiner will find a claim too broad and deny it. And as the Supreme Court said, the use of that standard encourages the applicant to draft narrowly. The Supreme Court said this helps ensure precision while avoiding overly broad claims. Can you respond to the board's reliance on the specification, which seemed to distinguish between the use of the word altering and the use of the word converting? Yes, Your Honor. I don't think that the specification provides support for that definition. And one of the problems I have with what the board did is that they relied on the specification of the 648 patent. That's a later filed continuation in part application. And they took new matter from that specification and relied on it in reaching an interpretation of this patent, including information that was not in there. And even the board acknowledged that the specifications still resulted in ambiguity about the meets and bounds of the claim. The part that I was referring to was in the 833 specification at column 7, lines 3 through 12. Yes, Your Honor. I don't believe that the board's attempt to distinguish between altering and converting was a valid distinction. In my view, and I believe I can demonstrate it on the record in this case, converting includes filtering. The board found otherwise, but in my view, converting includes filtering. And in this case, the prior art reference, which I've shown up here at the top, which is figure 5 from the prior art reference, it shows this circuit element 100 that is a capacitor. And it was described in the prior art as a noise removing unit. And the question is, is this converting the voltage from the power input end to the power output end? Now, Your Honor, if you would look in the record at the Odaharo reference, specifically at 4971, which is figure 2 of that reference, this shows an AC to DC converting circuit. Everybody would agree that this is circuitry for converting. So if you look at 4971, which is figure 2 of the Odaharo reference, there is on the left this square drawn, which is rectifying bridge 11. And then connected across it is a capacitor 12. Odaharo describes this AC-DC converting as including the rectification, which is number 11, and the smoothing function provided by the capacitor number 12. Well, that's filtering. So I would respectfully submit that converting includes rectification plus filtering if you're talking about AC-DC converting. Therefore, converting includes filtering. And why are you claiming this to a prior art patent to get to the broadest reasonable construction of the patent at issue? I mean, I thought you used Odaharo to show obviousness, which is a different topic that I assume we're not talking about. We're talking about the broadest reasonable claim construction of converting, and the board found a narrower one than you want. That is correct. It's because this is some evidence to support the notion that the construction is not unreasonable. Why would we look at extrinsic evidence of other art when we have the patent claims in the specification? Isn't that what the board did? They looked at the claims in the specification here, in particular the points referenced by my colleague, and found that altering and converting are different. Because I don't think that the intrinsic evidence supports that conclusion. Why are you pointing us to extrinsic evidence to rebut that? Shouldn't you be pointing us to intrinsic evidence to rebut that? I can do that too. If you look at the original prosecution, in the original prosecution, the patent owner effectively defined what converting meant. In the original prosecution, which is in the record at 5834, the patent owner distinguished a prior reference to Jinx. And in doing so, the patent owner emphasized that the Jinx reference failed to teach circuitry for converting, and emphasized converting, for converting the input power voltage to the output power voltage, because it disclosed a simple switch, quote, which when closed simply allows the same input voltage to pass through, i.e. without any conversion, as output voltage. And that's at 5834 of the record. So the patent owner indicated, when they were distinguishing the prior art, that converting meant that if it essentially changes the voltage, it's converting the voltage. And this is reinforced by their own brief, where they argued in their brief that when you use the symbol IE, that signals an intent to define the word to which it refers. And they say that in their principle brief at 22. So in the prior prosecution of the original patent application, when they made the statement that converting, prior doesn't have converting, I think because it's the same. As I understand it, your argument is that because this says that allowing the same voltage to pass through is not conversion, that means conversion includes everything else? Yes, that if you change the voltage, you're converting it, in the broadest sense. And it's not unreasonable to construe the claim that broad. I'm not sure if I agree with you that any time if someone says something is not converting, it means everything else is converting. I agree, but here we're looking for the broadest reasonable construction. Consistent with the specifications. Yes, and the prosecution history. And construing converting that broadly is not inconsistent. In fact, it's consistent with this argument that they made, and I agree with you. This argument doesn't go so far as to define it, but it does provide very strong evidence that the construction of the claim, interpreting the claim to include circuitry for converting is any circuitry that makes a change in the voltage. But what you read as said, what you read as said is that it disclaims direct pass through. It doesn't say anything about what it covers. Well, it said, i.e. converting, i.e. that it's the same voltage. Yeah, but that doesn't define converting. But it suggests, I think it strongly suggests that that's what they mean when they were using the term converting. They said this doesn't have converting because it's the same voltage going through it. And the language they use suggests that it's not unreasonable to construe converting that broadly. All they're saying is converting doesn't mean the same voltage. They're not further defining it. The specification actually distinguishes between converting and the other term they use. Sure, but it's not a – the purpose of the broadest reasonable interpretation rule was to force the patent owner to amend the claims to provide certainty. And in this case, if the patent owner wants to take the position that circuitry for converting means something other than making some change to the voltage so that you have a different voltage on the output from the voltage on the input, then the patent owner can amend the claims to make this clearer. And that is what the broadest reasonable interpretation rule is intended to – I understand what the board did here was looked at the specification and said the broadest reasonable construction in light of the specification. Limited it to converting from AC to DC or some sort of stepping. That's what I understood, that they were relying on the specification for that. Do you want to point us to something in the specification that you think undermines that conclusion? I can point you to the board's own conclusions that the specification was internally inconsistent. You're in your rebuttal time. Sure. Thank you, Your Honor. Mr. Schneider. Good morning and may it please the court. I believe there are three hurdles for Wolfstar – I'm sorry, for Superior to overcome. The first is a fact finding. The second and third are the legal issues of claim construction. Let me start with the fact finding. The three independent claims are shown on pages four and five of our principal brief. Each one has a portable rechargeable device as a preamble to the claim. The board found that this means the device must have a DC input. This is in the record at pages 49, 54, 56, and 62. And that the Yang reference was to an AC device and this is in the record at 23, 49, 62. Therefore, the board properly concluded and Superior has not rebutted the fact that the Yang document is for a different kind of device entirely and does not meet the language of the claim. That's a fact finding. Second fact finding, a second legal issue is drawing no power in the off state. Could you maybe address what your colleague argued to us about the broadest reasonable construction? Yes. First of all, the Jenks document, the prosecution history which was just addressed, was never raised in the briefs or the oral argument below. So that's a new issue on appeal. Now, the operative word to my thinking, Your Honor, is reasonable. Not the broadest possible, but the broadest reasonable. And in light of the specification which talks about altering, there is something that is not to be included in converting. Therefore, converting does not mean every possible change to a signal. If we didn't have those discussions of altering in the specification, would converting normally in this field include the noise reduction that your colleague talks about? I don't believe so and let me tell you why. The board said that in looking at the plain meaning, they would accept a technical dictionary, for example, over a general dictionary and that the technical dictionary to Jackson, referred to in the record at page 14, supports the board's conclusion of plain meaning. The board also said that while Superior's expert tried to say it is broader, he was able to give no examples. This is in the record at 17. And the board expressly rejected the attorney argument in the record at page 18 because it was not supported by any citation to the record. So how broad is converting? I don't know. But in the context of this document, it cannot be every possible change to voltage. Otherwise, as the board said, every circuit would then be a conversion and the rest of the clause for converting is superfluous. So the board addressed that possibility. Thank you, Your Honor. Drawing no power, there has been absolutely no response to that issue. And the third was converting, which we've just addressed. I do want to mention one thing to the court. We have dropped, by agreement, our cross-appeal. We're aware of that. I want to tell you what claims still remain in the case because some of the claims were rejected under a new ground of rejection and they're no longer in the case. So this is what's still in the case in numerical order. 4 and 5, 11 to 27, 33 to 37. And I will tell you that 4 and 5 do depend from independent claim 1, which is why I referenced it in my remarks a few moments ago. And the chart is on pages 4 and 5 of our principal brief. So those are the only remaining claims in the case. Claims that were successful on one ground of rejection and which were in the cross-appeal are now out of the case. Any further questions, Your Honor? Nope. Thank you very much. Thank you, counsel. You didn't set a new record, but you're close. Your Honor, this case is not set in the breeze because it's only decided in December, but in D'Agostino versus MasterCard International at 844 F 3rd 945 in December of last year, this court held that the prosecution history should factor into the broadest reasonable interpretation analysis. One thing I want to say in rebuttal, you just heard counsel get up here and say, how broad is converting? I don't know. That's what the broadest reasonable interpretation rule is supposed to eliminate. It is supposed to force patentees to amend their claims to provide certainty so no one will walk out of here saying, I don't know what this claim means. How did the case you just cited not arise in your principal argument as opposed to in the rebuttal argument? Were you unaware of it? No, Your Honor. Your counsel said that the claim that Well, the prosecution history was discussed in your principal argument. Yes. It was in rebuttal to counsel's statement concerning the original prosecution history. Anything further? No, Your Honor. Thank you, counsel. The matter will stand as amended.